**In re Robert P. HORGOS, Judge of the Court of Common Pleas, Fifth Judicial District, Allegheny County.**

**No. 4 JD 95.**

Court of Judicial Discipline of Pennsylvania.

July 23, 1996.

---

Before BURNS, McGINLEY, DONOHUE, CASSEBAUM, MAGARO and MESSA, JJ.

## DECISION

McGINLEY, Judge.

### Findings of Fact

1. Robert P. Horgos, the Respondent, is a duly-elected judge of the Court of Common Pleas serving the Fifth Judicial District, which encompasses Allegheny County, Pennsylvania.

2. The Respondent was elected in November 1983 to serve as a judge of the Court of Common Pleas in the Fifth Judicial District, has served in that capacity since approximately December 16, 1983, and continues to serve as a judge at this time.

3. The allegations contained in the Board's Complaint arise out of the Respondent's actions with respect to the Estate of James Donatelli, which is docketed at No. 71 of 1992 in the Office of the Register of Wills for Allegheny County, Pennsylvania.

4. James Donatelli, the decedent, formerly of 6012 Bryant Street, Pittsburgh, Pennsylvania, died on December 23, 1991.

5. On January 3, 1992, the Register of Wills admitted the will of the decedent to probate, and Letters Testamentary were granted to the Respondent.

6. On January 3, 1992, David Metinko, attorney for the Estate of James Donatelli, filed in the Court of Common Pleas of Allegheny County a Motion to Impound the Will and Record in the Estate, which motion the Respondent verified in his capacity as executor. The Respondent sought impoundment of the will because he believed Felix Donatelli, the decedent's brother and the chief beneficiary of the decedent's estate, needed to be insulated from outside sources of undesirable monetary and emotional pressure.

7. On January 3, 1992, Senior Judge Nathan Schwartz granted the Motion to Impound and ordered the will and record to be impounded.

8. On April 3, 1992, the Respondent, as executor of the estate, issued Check No. 188 in the amount of $150,000 to be drawn on the estate checking account (Integra Bank Account No. 3000003021), and made payable to the Respondent.

9. The said $150,000 represented an estimated executor's commission of $125,000 and a bequest to the Respondent of $25,000.

10. On September 23, 1992, a Pennsylvania Inheritance Tax Return was filed in the Register of Wills Office in Allegheny County, Pennsylvania, which indicates on Schedule H, Funeral Expenses, Administrative Costs and Miscellaneous Expenses, a $125,000 deduction that the Respondent received as an executor's commission.

11. The Respondent was not a blood relative of the decedent.

12. The Respondent has lived in his parent's home all his life, and never lived with the decedent. Nor did the Respondent ever enter the decedent's home while the decedent was living.

13. The decedent visited the Respondent's home often, sometimes even when the Respondent was not at home. The decedent ate meals at the Respondent's home that were prepared by the Respondent's mother to whom the decedent referred as "Mama." The decedent and the Respondent's father were good friends.

14. At social functions the decedent sat with the Respondent's family, and the Respondent's family always included the decedent at social events. It was known and expected by others that the decedent would be included with the Respondent's family.

15. The decedent and the Respondent spoke together often on the telephone.

16. The decedent attended campaign functions with the Respondent, when the Respondent was involved in the elective process.

17. The decedent visited the Respondent at his judicial offices approximately three times per week. When visiting the Respondent at his office, the decedent sometimes was waiting at the Respondent's office before the Respondent or his secretary arrived in the morning.

18. Felix Donatelli is the younger brother of the decedent, James Donatelli. Felix and James lived together throughout the decedent's lifetime.

19. Felix Donatelli has known the Respondent for approximately twenty years, and often visited the Respondent's home.

20. The decedent reasonably believed his brother Felix needed care and assistance.

21. The decedent relied upon the Respondent for personal support and, more importantly, relied upon the Respondent for the familial support of his brother, Felix.

22. The decedent and the Respondent and the Respondent's family discussed the possibility of caring for and providing room in the Respondent's home for Felix Donatelli if necessary.

23. Before his death, the decedent arranged for Felix Donatelli to stay with the Respondent in the Respondent's home if Felix would not be able to stay in his own home, in the event the decedent predeceased his brother.

24. The Respondent acted in a brotherly, protective manner towards the decedent.

25. At the time of James Donatelli's death, the home in which he lived with his brother Felix was unkempt, dirty and rat infested. As executor, the Respondent made substantial repairs to the home to assure the home was fit for Felix Donatelli's safety and health.

26. The Respondent maintained a close familial relationship with the decedent.

27. By Order No. 47, dated April 13, 1984, and docketed at Judicial Administration No. 1, the Supreme Court of Pennsylvania directed that judicial officers are required to file Statements of Financial Interest.

28. The Supplemental Instructions to the Statement of Financial Interest form require judges to report gifts as follows:

> List individual items whose value is $200 or more which was received from one source. DO NOT list gifts received from spouse, parents, parents by marriage, children and grandchildren.

29. On his Statement of Financial Interest for the year of 1992, which the Respondent filed on or about May 5, 1993, the Respondent failed to include the Estate of James Donatelli as a source of income or gift. Specifically, the Respondent made no reference to the executor's commission from the Estate of James Donatelli, and made no reference to any bequest from the estate.

30. On his Statement of Financial Interest for the year of 1993, filed on April 18, 1994, the Respondent disclosed that he had received a bequest valued at "over $200" from the Estate of James Donatelli.

31. As of June 30, 1995, the Estate of James Donatelli was still pending in the Register of Wills Office and a final distribution of the estate had not been made.

32. The Respondent terminated his status as executor of the decedent's estate on October 18, 1995.

33. The Respondent has never disclosed on a Statement of Financial Interest that the Estate of James Donatelli was the source of an executor's commission and/or income for him.

### Discussion

The Board's charges in this case arise out of the Respondent's act of serving as executor for the Estate of James Donatelli, who died on December 23, 1991. The Board contends that the Respondent engaged in misconduct by (1) improperly serving as an executor for the estate of a person, who, under Canon 5D of the Code of Judicial Conduct, was not a "member of his family," or someone with whom he maintained a "close familial relationship," and by (2) failing accurately and completely to report income and a bequest he received from the estate, as required by Order of the Supreme Court.

### Canon 5D

Canon 5D of the Code of Judicial Conduct provides:

> A Judge should not serve as the executor, administrator, trustee, guardian, or other fiduciary, except for the estate, trust, or person of a member of his family, and then only if such service will not interfere with the proper performance of his judicial duties. "Member of his family" includes a spouse, child, grandchild, parent, grandparent, or other relative or person with whom the judge maintains a close familial relationship.

The Board contends that the Respondent was neither related by blood or marriage to the decedent nor had a close familial relationship with the decedent, and therefore violated Canon 5D by acting as the executor of James Donatelli's Estate. The Respondent contends that, despite the lack of ties of blood or marriage, he and the decedent maintained a close familial relationship.

Canon 5D of the Code of Judicial Conduct replaces Canon 27 of the former Canons of Judicial Ethics, which generally authorized

judicial officers to act in a fiduciary capacity, so long as such activities created no interference with the judicial officer's duties. In developing the present Canons, which the American Bar Association adopted in 1972, and which the Pennsylvania Supreme Court made applicable to judges January 1, 1974, the drafters concluded that Canon 27 provided for too broad a range of situations in which a judicial officer could act as a fiduciary. The drafting committee was concerned with the impact upon "the public, other litigants and lawyers representing other parties," when judges act as fiduciaries. *See,* E. Wayne Thode, Reporter's Notes to the Code of Judicial Conduct, 87 (1973). The committee believed that a party whom the judicial officer represented would appear to have an advantage of preferential treatment, and that limitations should be placed upon the range of parties for whom a judicial officer could act as a fiduciary.

The committee concluded that a judicial officer should not act as a fiduciary for a person who is merely a close friend. However, as indicated in Thode, *supra,* the committee adopted the "other person" category of Canon 5D in the belief that a judicial officer may properly act as a fiduciary for certain persons to whom they are not related, either by blood or marriage, if the relationship is more than a simple close friendship, i.e., a close familial relationship.

██ The question of what constitutes a "close familial relationship", pursuant to Canon 5D has never been litigated in Pennsylvania and has been analyzed infrequently in other jurisdictions.

In *Matter of Peeples,* 297 S.C. 36, 374 S.E.2d 674 (1988), the Supreme Court of South Carolina considered charges brought against a judicial officer for acting as an executor for a former client who had become a close friend. Specifically, before the respondent judicial officer became a judge, he acted as the attorney for the decedent, beginning in 1964. From 1972 until 1974, the decedent lived with her husband in a house next door to the judge. During those two years the decedent and her husband became "affectionately attached" to the respondent's two daughters, and regarded them as their grandchildren. 374 S.E.2d at 674. After the respondent was elected to the bench in February 1974, but before he took office in December of that year, he prepared a will for the decedent in which the respondent's daughters were named as potential beneficiaries and the judge was named as the executor. The Court, looking at the specific facts in the case, and without adopting a standard, concluded that the judge did not violate Canon 5D, because the record supported a finding that the judge maintained a close familial relationship with the decedent.

In Advisory Opinion # 5–89, issued by the Indiana Commission on Judicial Qualifications, the Commission, citing Thode, *supra,* concluded that a judicial officer who (1) had known an elderly friend for forty years, since the judge was a young child, and (2) as an adult, had cared for and socialized with the friend, driven the friend to social events and doctors appointments, and provided assistance with financial matters, had maintained a close familial relationship with his elderly friend. The Commission, citing the dictionary definition of "familial" as having the characteristics of a family, noted that the nature of the judge's friendship had been filial, nurturing and lasting—the ideal characteristics of a close family relationship.

Hence, disciplinary entities from two other jurisdictions have interpreted Canon 5D to encompass relationships between persons who cannot claim to be related by blood or marriage, or to have lived together.

Similarly, this Court's conclusion is that a close familial relationship can exist even when no bond of blood or marriage exists, and even when two unrelated persons have never cohabited.

In seeking to develop definitional limits of the term "close familial relationship," the Court must look not only to traditional family settings or structure, i.e., cohabitation, but also to the elements that distinguish the interaction common to traditional family relationships. Factors such as (1) intimacy of address, (2) recognition by others of a close relationship, (3) shared meals, (4) frequent contact either by phone or in-person, (5) shared holidays, (6) shared family events, (7)

assistance with physical, medical, legal or emotional needs, and (8) longevity, all tend to indicate that two people have a "close familial relationship" rather than a simple friendship.

■ This Court concludes that when a relationship between two unrelated persons resembles a family relationship such as between spouses, parent and child, or siblings, and when the relationship is nurturing and possesses some of the characteristics typical of a traditional family relationship, as noted above, a close familial relationship will be found to exist. In such circumstances, a judicial officer does not violate Canon 5D by acting in a fiduciary capacity. The question of whether a particular relationship is a close familial one must be decided on a case-by-case basis.

■ In the present case, the facts clearly indicate that many of the above-noted factors were present in the relationship between the Respondent and James Donatelli.

The Respondent's family demonstrated that it shared the decedent's concern for the care of his brother, by discussing future plans for Felix and agreeing to take care of him if necessary. The decedent was concerned for his brother's well-being, in the event he predeceased Felix, and relied upon the Respondent and the Respondent's family for the care of Felix. The Respondent and his family were prepared to open their home for Felix Donatelli and welcome him as a family member.

The Respondent and the decedent were so close that the decedent visited the Respondent approximately three times a week at the Respondent's judicial offices, and sometimes arrived there before the Respondent and his secretary. The decedent and the Respondent spoke together often on the phone.

Additionally, the decedent often dined at the Respondent's home, and, when he spoke with the Respondent's mother, referred to her as "Mama." The Respondent's family welcomed the decedent at social events. And, people who knew both the Respondent and the decedent regarded the relationship as brotherly.

Although the facts indicate that the Respondent never entered the decedent's home when he was alive, that one factor does not detract from the other factors present, which characterize the relationship as one that was not only close but also familial. Indeed, the level of interaction between the Respondent and decedent, which involved emotional support and caretaking of the decedent's brother, demonstrates a relationship far superior to many real family relationships. Accordingly, we conclude that the Respondent and the decedent maintained a close familial relationship.

The Board would have us infer that the Respondent was knowingly in violation of this Canon, by suggesting that the Respondent sought to conceal his status as executor by having the will impounded. To make such an inference is pure conjecture, especially in light of the reason given for the request for impoundment.

### Statement of Financial Interest

With regard to the second part of the Board's Complaint, relating to the Respondent's failure to complete his required Statement of Financial Interest, we agree that the Respondent was required by Supreme Court Order No. 47 of 1984 to report (1) the Donatelli Estate as a source of income and (2) the amount of the bequest from the Estate, but failed to do so.

In the years following the Supreme Court's adoption of the rule requiring judges to disclose aspects of their financial interests, the Supreme Court has only once indirectly addressed the issue of a judge's failure accurately to complete a Statement of Financial Interest.

In *Matter of Chiovero*, 524 Pa. 181, 570 A.2d 57 (1990), the Supreme Court reviewed a recommendation made by the Judicial Inquiry and Review Board (JIRB), the entity formerly empowered to investigate and hear allegations of misconduct by the members of the judiciary.

The charges in *Chiovero* arose after a roofer installed a new roof on Judge Chiovero's home without the consent or knowledge of the Judge. JIRB had concluded that Judge Chiovero had violated certain canons of the

Code of Judicial Conduct by allegedly improperly accepting the roof as a gift from a potential litigant before him.

During the course of the proceedings in that case, an issue arose regarding Judge Chiovero's response to question 11 of the Statement of Financial Interest form. Judge Chiovero, rather than respond that he had not received a gift, raised the Fifth Amendment right against self-incrimination in response to the question. The Supreme Court directed the judge to respond to the question regarding gifts by either indicating he had not received a gift or by relating the facts surrounding his receipt of the roof.

In attempting to comply with the Supreme Court's directive, Judge Chiovero indicated that he had paid for the roofing work, but was not sure of the fair and reasonable value of the services. The Supreme Court concluded that the judge, having indicated that he paid a price for the work but was uncertain of the work's value, was required to file a complete factual response regarding the installation of the roof. However, it was not until Judge Chiovero submitted the third nonresponsive answer that the Supreme Court indicated it would impose sanctions for failure to answer accurately.

The Supreme Court's approach in *Chiovero* provides guidance for the disposition of the case at hand. We first note that, once the Supreme Court became aware that some question existed as to the accuracy of the judge's response, the Supreme Court afforded the jurist two opportunities to submit a revised response before threatening any disciplinary action. Second, we note that the Supreme Court concluded that, with regard to the underlying charges in the case, the Board had failed to submit any evidence in support of its suggestion that the roof was installed by the roofer in order to receive favorable treatment as a potential litigant before Judge Chiovero.

■ We abstract and adopt the following principles: (1) a judicial officer who does not provide a complete and accurate response to a question on the Statement of Financial Interest form may be afforded an opportunity to revise the response, and (2) the facts surrounding a specific unreported

gift and the degree to which the lack of completeness impacts the public trust should be considered in determining whether the questioned response constitutes misconduct by the jurist.

■ In the present case, the record does not indicate whether the Supreme Court is aware that the Respondent has not completely and accurately responded to questions 10 and 11. As with the *Chiovero* case, it seems appropriate to provide the Respondent with an opportunity to respond completely. Additionally, the record in this case reveals no evidence that would suggest that the Respondent, by receiving the commission and bequest and not reporting them, has adversely impacted the public trust.

We note that, under different facts, a failure accurately to complete the Statement of Financial Interest could constitute a violation of a rule prescribed by the Supreme Court, rather than a violation of Article V, section 17(b) of the Constitution, as charged by the Board. However, based on the facts in this case, we conclude that the Respondent has not engaged in misconduct under any constitutional provision for his failure accurately to complete the Statement of Financial Interest for 1992 or 1993.

The Court does note, however, that the Respondent filed an incomplete response to the Statement of Financial Interest form. This Court strongly suggests that the Respondent submit a revised and corrected form.

### Conclusions of Law

1. The Respondent maintained a close familial relationship with the decedent, James Donatelli.

2. The Respondent, by acting as executor of the Donatelli Estate, did not violate Canon 5D of the Code of Judicial Conduct.

■ 3. The Respondent, in acting as executor of the Donatelli Estate, did not engage in misconduct in office.

4. The Respondent, by acting as executor of the Donatelli Estate, did not prejudice the proper administration of justice.

5. The Respondent, by acting as the executor of the Donatelli Estate, did not bring the judicial office into disrepute.

6. The Respondent, by acting as the executor of the Donatelli Estate, did not violate Canon 1 of the Code of Judicial Conduct.

7. The Respondent, by acting as the executor of the Donatelli Estate, did not violate Canon 2 of the Code of Judicial Conduct.

8. The Respondent, by acting as the executor of the Donatelli Estate, did not violate Article V, section 17(b) of the Pennsylvania Constitution.

9. The commission the Respondent received for acting as the executor of the Donatelli Estate constitutes a direct source of income for the Respondent.

10. The bequest the Respondent received from the Donatelli Estate constitutes a gift as contemplated by Supreme Court Order No. 47 of 1984, and the Respondent was therefore required to report the Estate as the source of a gift and the amount of the gift and its value on his Statement of Financial Interest.

11. The Respondent failed to complete accurately his Statement of Financial Interest for the years 1992 and 1993 by failing to report the Donatelli Estate as a source of income and by failing to report the amount of the bequest he received.

12. The Respondent, by failing to comply with the Supreme Court's requirement to complete accurately a Statement of Financial Interest, did not violate Article V, section 17(b) of the Pennsylvania Constitution.

13. Based upon the circumstances in this case, the Respondent, by failing to complete accurately the Statement of Financial Interest, did not engage in misconduct in office.

14. Based upon the circumstances in this case, the Respondent, by failing to complete accurately the Statement of Financial Interest, did not engage in conduct which prejudices the proper administration of justice.

15. Based upon the circumstances in this case, the Respondent, by failing to complete accurately the Statement of Financial Interest, did not engage in conduct which brings the judicial office into disrepute.

16. Based upon the circumstances in this case, the Respondent, by failing to complete accurately the Statement of Financial Interest, did not violate Canon 1 of the Code of Judicial Conduct.

17. Based upon the circumstances in this case, the Respondent, by failing to complete accurately the Statement of Financial Interest, did not violate Canon 2 of the Code of Judicial Conduct.

McCLOSKEY, P.J., did not participate in the consideration or disposition of this decision.

## ORDER

AND NOW, this 23rd day of July, 1996, based upon the above Conclusions of Law, it is hereby ORDERED:

1. Pursuant to C.J.D.R.P. No. 503, the attached Opinion with Findings of Fact, Conclusions of Law, and Proposed Order is filed and shall be served on the Judicial Conduct Board and the Respondent.

2. Either party may file written Objections to the Court's Findings of Fact and Conclusions of Law within ten (10) days of this Order. Said objections shall include the basis therefor and shall be served on the opposing party.

3. If timely Objections are not filed the Findings of Fact and Conclusions of Law shall become final, and the Proposed Order will be entered.

## PROPOSED ORDER

AND NOW, this 5th day of August, 1996, based upon the above Findings of Fact and Conclusions of Law, this Court hereby dismisses the Complaint against the Respondent.